Judge Wood
delivered the opinion of the court:
The fact that no case is found in which the question before us has come up for direct consideration is rather surprising, but it forms no available argument for one or for the other *party. It is subject to the plain and obvious answer long since given in such cases ; either way, it may have been acted upon as a matter .too plain for dispute.
The right of one individual to mako- another his debtor, by volunteering to disturb rights legally fixed, upon dobts due, is conifined to this special case of paying a bill supra protest, for the *456 honor of the drawer or indorser. The proceeding has grown up with the law merchant, and we have not attempted to look after its commencement. The elementary writers treat su ch payor as acquiring an original right in himself-against the persons for whose honor he pays, and upon the right thus acquired, he is invested with the rights of the person for whose honor he paid, in relation to other parties to the protested paper. But he acquires no new rights against any one.
Payment, for the honor of the indorser, binds such indorser to refund the amount paid, upon which he is reinvested, with all his original rights, which, until such payment is made, are held by the payor. It would seem but reasonable that prompt notice should, in such cases, be given to a party, upon whom, without his knowledge or consent, these new relations are imposed. The change may very seriously affect his interests; for it might be that eveiy other party^to the bill were his debtors, and bankrupts, so that this payment for honor subjects him to a total loss that could not otherwise have occurred. Had the rule been settled, that no notice need be given to an indorsor, that a bill had been paid, after a protest, for his honor, we should conform to it; but finding it an open question we are clear in deciding that such notice should be required.
A just conception of the operation of any'rule of law can be best obtained at the trial of a case in which it is involved. The temptations it may create, the shifts and resorts to which it may give rise, are very often developed in the course of a trial. There was somewhat of this in the trial of the ease now before us, as reported by the judges who tried the cause.
The drawer of the. bill resided in Cincinnati, where he transacted .a large business as a commission merchant and dealer in produce. He had correspondents and credit in New York, where he was well known to the plaintiffs, and ti'ansacted business with them. There, too, lived the acceptor, also an acquaintance of the plaintiffs. The indorsers, the defendants, *were pork dealers in Cincinnati, with no direct commercial connection in New York. In this state of things, it was obvious that, if immediate notice that the payment of the bill supra protest, for the honor of the indorsei*s, was not one part of the rule of law that charged them, they were placed in the most disadvantageous relation to all the other parties to the bill. The day succeeding that on which notice *457 of the protest was received, information was forwarded that the bill was paid, with no intimation that it was paid for account of any individual party to it. The effect was to induce a conviction on the indorsers that their liability was at an end, and also to re-establish the credit of the drawer. Thus, the indorsers were led to take no steps for their own security, and a door was opened for a confidential understanding between the other parties, in which time was obtained for efforts to restore their credit at the ultimate risk of these indorsers. This might take place, if the rule of notice was not held necessary. And it very plainly shows what a door would be open in just such a ease, for swindling impositions. There is no imputation of that in the case .before us. But the whole facts tended strongly to suggest what abuses the rule contended for by the plaintiffs, might introduce into the mercantile business of the country. New trial refused.